UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS HARRIS BEY,

    Plaintiff,

v.

Case No. 2:19-cv-11556
District Judge Nancy G. Edmunds
Magistrate Judge Kimberly G. Altman

GREGG HISSONG, JENNIFER JONES,
CHARLES RANDLE,[1] and MATTHEW
HARPST,

    Defendants.
_____/

# REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 33)

## I. Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. In broad terms, plaintiff, Curtis Harris Bey, proceeding *pro se*, is suing defendants, Michigan Department of Corrections (MDOC) employees, claiming a violation of his First Amendment rights. Defendants were all employed at the Gus Harrison Correctional Facility during the period relevant to this case. Matthew Harpst was the Classification Director, Gregg Hissong was the Food Service Director, Charles

---

[1] This name is misspelled in the caption. According to his affidavit, the correct spelling is "Randall." *See* ECF No. 33-3.

1

Randall was the Food Service Supervisor, and Jennifer Jones was a cook. (ECF No. 33-3, PageID.192, 194; ECF No. 33-5, PageID.202; ECF No. 33-13, PageID.266-267).

Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned. (ECF No. 27). Before the Court is defendants' motion for summary judgment. For the reasons that follow, the undersigned recommends that defendants' motion be GRANTED.

## II. Background

The events giving rise to the complaint are reflected in the various grievances Harris Bey filed in October of 2018, regarding alleged incidents that occurred while he completed his food service work detail. (ECF No. 33-2, PageID.176-179).

The first grievance (ARF-18-10-2712-17B) alleges that, on October 19, 2018, Harris Bey spoke to Randall and Jones. (*Id*., PageID.177). Harris Bey alleged that Randall and Jones threatened him because he stated that he would be filing a grievance against their coworkers. (*Id*.) Jones and Randall told Harris Bey to "get his black [a]ss out of the [k]itchen" before sending him back to his unit and telling him that he would be fired. (*Id*.)

2

A supplemental grievance form for this first grievance alleges that, on October 22, 2018,[2] "Prisoner Harris yelled at Cook Jones telling her to go back to south food service where you belong as she was shaking down the laundry area. A Class II Misconduct was written for Insolence but misplaced and lost." (*Id.*, PageID.188). The form also states that Harris Bey would be able to return to food service work detail because the misconduct ticket was misplaced. (*Id.*)

In his affidavit, Randall stated that he witnessed a confrontation between a Jones and Harris Bey on October 19, 2018. (*Id.*, PageID.193). Harris Bey loudly told Jones to " 'go back to the south side' " in an "abusive manner." (*Id.*). Jones, in her affidavit, confirmed Randall's account of the incident, except she stated that Harris Bey told her to " 'get (my) ass back to the south side.' " (ECF No. 33-4, PageID.199).

Randall denied telling Harris Bey that he "had a problem with him filing grievances against anyone." (*Id.*). Randall similarly denied ever using vulgar or abusive language when speaking to Harris Bey. (*Id.*) Jones' affidavit contained similar denials. (ECF No. 33-4, PageID.199).

Because of the October 19, 2018 incident, Jones wrote Harris Bey an insolence misconduct ticket and Harris Bey was laid-in (temporarily suspended)

---

[2] This date appears to be incorrect. Other evidence in the case suggests the event described occurred on October 19, 2018.

3

from his work assignment. (ECF No. 33-3, PageID.193; ECF No. 33-4, PageID.199). However, as noted above, the ticket was misplaced and Harris Bey was reinstated to his work assignment at the same pay rate. (ECF No. 33-3, PageID.193).

The next grievance (ARF-18-10-2711-17A) alleges that, on October 22, 2018, Harris Bey talked to Hissong and attempted to talk to Jones shortly after arriving to his food service work detail. (*Id.*, PageID.176). Hissong allegedly told Harris Bey that he was tired of him filing grievances against Hissong's coworkers and that Harris Bey was fired from food service work detail. (*Id.*).

In response to the grievance, a prison official[3] indicated that Harris Bey was offered the opportunity to return to food service work detail along with backpay. (*Id.*). Harris Bey allegedly stated that he did not want to return and then walked out. (*Id.*). A supplemental grievance form indicates that "Prisoner Harris was told to report to the food service officer to be laid in due to yelling at Cook Jones and a statement from FSL-9 Randall stating Prisoner Harris was yelling at Cook Jones." (*Id.*, PageID.180).

The third grievance (ARF-18-10-2760-02A) alleges that, on October 24, 2018, Harpst terminated Harris Bey from his food service work detail even though

---

[3] The official's name is illegible.

4

Harris Bey had not received any misconducts. (*Id.*, PageID.178). Harris Bey requested reinstatement. (*Id.*)

In his affidavit, Harpst stated that Harris Bey contacted him on or around October 24, 2018, regarding his kitchen work assignment. (ECF No. 33-13, PageID.266-267). Harpst told Harris Bey that he had not received any paperwork from the kitchen supervisors requesting Harris Bey's removal and that Harris Bey had, therefore, not been terminated from his assignment. (*Id.*, PageID.267). After making inquiries, Harpst received a work report indicating that Harris Bey was laid-in (temporarily suspended) after receiving a misconduct ticket. (*Id.*) This was consistent with both MDOC policy[4] and the policy and practice of the correctional facility. (*Id.*) Harpst retired on December 3, 2018, and does not know if Harris Bey received backpay or reinstatement. (*Id.*) Harpst denied conspiring to retaliate against Harris Bey or actually retaliating against him. (*Id.*) Harpst was unaware of any grievances filed by Harris Bey against food service staff. (*Id.*)

A supplemental grievance form for this third grievance states that Harris Bey was first assigned a kitchen job on December 8, 2015, and that his removal from that job was requested on or about October 24, 2018, when Harris Bey received a

---

[4] The relevant portion of MDOC policy states, "With prior approval of the Warden or designee, a prisoner who is charged with any misconduct may be temporarily suspended (i.e., 'laid in') from his/her assignment pending the misconduct hearing." (ECF 33-8, PageID.230).

5

class II misconduct. (*Id.*, PageID.189). The decision summary on the form indicates:

> Mr Harris was properly removed from his work assignment pending a hearing. Classification investigated the progress of the alleged misconduct and was unable to find that a misconduct was processed. Since a misconduct was not processed Mr Harris will be returned to a kitchen assignment. He will receive back pay for the period of time he was removed from a kitchen assignment. Mr Harris should be aware that he may be returned to any kitchen assignment and that he is NOT entitled to one of the same pay rate as he previously held.

(*Id.*)

The final grievance (ARF-18-10-2773-22Z)[5] alleges that, on October 24, 2018, Baker and Jones signed an evaluation requesting Harris Bey's termination from food service work detail because he received a misconduct. (*Id.*, PageID.179). Harris Bey alleged that he never received a misconduct. (*Id.*)

Emails between the MDOC defendants indicate that Jones wrote Harris Bey a misconduct insolence ticket stemming from an incident that occurred on October 19, 2018. (*Id.*, PageID.182). However, as has been noted above, that misconduct ticket was lost. (*Id.*, PageID.181).

In his affidavit, Hissong explained that he was familiar with the October 19, 2018 incident and never told Harris Bey that he had a problem with Harris Bey

---

[5] The last three digits of the grievance number are difficult to discern. The grievance number listed in this report represents the undersigned's best attempt to decipher the handwritten number.

6

filing grievances. (ECF No. 33-5, PageID.202-203). Hissong also said he did not threaten Harris Bey. (*Id.*, PageID.203).

Hissong, however, further stated that he issued a Harris Bey a misconduct on January 4, 2019, for threatening behavior. (*Id.*). According to Hissong, Harris Bey became agitated after a grievance review. (*Id.*). Hissong recalled that Harris Bey leaned over a table, pointed his finger, and yelled " 'you better watch what you say' " in a "loud and aggressive" manner. (*Id.*). Hissong believed that Harris Bey was "trying to intimidate [him] and may try to physically harm [him]." (*Id.*). Hissong did not issue the misconduct in retaliation for Harris Bey filing a grievance, and "would have taken the same action with any prisoner, regardless of any grievance or any other factor." (*Id.*).

On January 10, 2019, a hearing was held by a hearing officer on the January 4, 2019 misconduct ticket. (ECF 33-6, PageID.207-208). The hearing officer found that the record did not support a threatening behavior charge but did support the lesser included charge of insolence. (*Id.*, PageID.207). The disposition was a 28-day loss of privileges for Harris Bey. (*Id.*)

### III.  Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

7

56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Harris Bey is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.' "

8

*Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

### IV. Analysis

#### A. First Amendment

Defendants argue that summary judgment is appropriate on both of Harris Bey's claims for retaliation because he cannot establish all of the necessary elements of a retaliation claim as a matter of law.

" '[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, ___ U.S. ___, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). "An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). A First Amendment retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct;
> (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and
> (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

"[T]o prove causation it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured." *Coleman v. Mohlman*, No. 2:19-cv-13494, 2020 WL 5648352, at *6 (E.D. Mich. Aug. 24, 2020), *report and recommendation adopted*, 2020 WL 5645715 (E.D. Mich. Sept. 22, 2020) (citing *Nieves*, 139 S. Ct. at 1722). "The retaliatory motive must be a 'but-for' cause to the adverse action." *Id*. "The Sixth Circuit has held that 'temporal proximity between the protected conduct and the adverse action by the state actor' may be sufficient evidence of causation." *Coleman*, at *6 (quoting *Paige v. Coyner*, 614 F.3d 273, 283 (6th Cir. 2010)).

Harris Bey's retaliation claims are that: (1) defendants retaliated against him for filing grievances when they fired him from his kitchen work assignment and (2) Hissong retaliated against him for filing a grievance when Hissong issued him the January 4, 2019 misconduct ticket. Each claim is addressed in turn below.

### 1. Retaliatory Firing

Defendants argue that Harris Bey cannot establish elements two and three of his retaliatory firing claim. That is, he cannot establish that an adverse action occurred or that there was a causal connection between his filing of grievances and the "adverse action."

Defendants first contend that Harris Bey was not actually fired from his kitchen work assignment. Instead, Harris Bey was laid-in, or temporarily

10

suspended, from the assignment pending a hearing on a misconduct ticket issued by Jones. Harris Bey was later given back pay and offered reinstatement at the same pay rate when it was discovered that the misconduct ticket disappeared. Defendants rely on *Coleman* to argue that being laid-in is not an adverse action for the purposes of a retaliation claim.

In *Coleman*, the magistrate judge determined that a "lay-in" did not constitute an adverse action under the law. *Coleman*, at *8. This determination relied on the fact "that in the Sixth Circuit, '[s]everal panels [ ] have determined that a suspension with pay does not constitute an adverse action' for purposes of a First Amendment retaliation claim." *Id.* (quoting *Sensabaugh v. Halliburton*, 937 F.3d 621, 629 (6th Cir. 2019) (citing *Ehrlich v. Kovack*, 710 F. App'x 646, 650 (6th Cir. 2017) and *Harris v. Detroit Pub. Schs.*, 245 F. App'x 437, 443 (6th Cir. 2007))). A suspension with pay does not constitute an adverse action as it does not involve "termination of employment, a change in salary, demotion, loss of benefits, decreased work hours, or significantly diminished material responsibilities." *Jackson v. City of Columbus*, 194 F.3d 737, 752 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Following *Coleman* and the cases it relied on, because Harris Bey was not fired, only laid-in, and received back pay for the time he was laid-in, the undersigned finds that he cannot establish that an adverse action occurred.

11

As Harris Bey has failed to demonstrate that an adverse action occurred, there is no need to address the third element of a retaliation claim, namely whether there was a causal connection between the protected conduct and the adverse action. Nonetheless, even assuming an adverse action occurred, the record fails to show a causal connection between the protected conduct (filing of grievances) and the alleged adverse action.

Here, Harpst as the Classification Director was responsible for removing Harris Bey from his kitchen work assignment. In order to show causation, Harris Bey must establish that Harpst removed him because Harris Bey filed grievances against the kitchen staff. Harris Bey has failed to do so. In his affidavit, Harpst stated that he was unaware of any grievances filed by Harris Bey against the food service staff. Harris Bey did not produce any evidence to rebut this statement. Accordingly, because Harpst did not even know Harris Bey engaged in protected activity, it cannot be said that the alleged adverse action that Harpst took against Harris Bey resulted from Harris Bey's engagement in a protected activity.

Overall, Harris Bey has failed to produce evidence to establish the necessary elements of an adverse action and causal connection sufficient to survive summary judgment on his claim for retaliatory discharge.

2. Retaliatory Misconduct Ticket

As to Harris Bey's claim that Hissong falsely accused him of threatening behavior, a major misconduct, because of grievances he filed against Hissong and his coworkers, Hissong argues that this claim is barred under Sixth Circuit law because there has been a finding of guilt on the misconduct.

In *Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013), the Sixth Circuit held that a hearing officer's factual findings in a major misconduct hearing precluded contrary findings in federal court. "To determine whether we must give preclusive effect to 'factfinding from Michigan prison hearings,' we look to four requirements, all of which must be met: (1) the state agency 'act[ed] in a "judicial capacity" '; (2) the hearing officer 'resolved a disputed issue of fact that was properly before it'; (3) the prisoner 'had an adequate opportunity to litigate the factual dispute'; and, (4) if these other three requirements are met, we must 'give the agency's finding of fact the same preclusive effect it would be given in state courts.' " *Maben v Thelen*, 887 F.3d 252, 259 (6th Cir. 2018) (quoting *Peterson*, 714 F.3d at 911-13).[6]

---

[6] In *Maben*, the Sixth Circuit declined to extend *Peterson*'s holding to a hearing officer's factual determinations at a *minor* misconduct hearing. Here, Harris Bey was issued a ticket for threatening behavior, which is a class I (major) misconduct. *See Colvin v. Washington*, Case No. 2:18-cv-150, 2019 WL 521502 (W.D. Mich. Feb. 11, 2019) (giving preclusive effect to ticket for threatening behavior but not to ticket for disobeying a direct order, a minor misconduct).

"Under the first requirement, the state agency must have been acting in a 'judicial capacity.'" *Maben*, 887 F.3d at 259-260. "An administrative agency 'acts in a judicial capacity when it hears evidence, gives the parties an opportunity to brief and argue their versions of the facts, and gives the parties an opportunity to seek court review of any adverse findings.'" *Id*. (quoting *Peterson*, 714 F.3d at 912). Here, the hearing officer, a licensed attorney, acted in a judicial capacity by considering evidence such as the misconduct report, Harris Bey's statement, another inmate's statement,[7] and a video still of the incident. *See* ECF 33-6. The hearing officer also considered, but ultimately rejected, Harris Bey's version of events. *See id*., PageID.207.

Additionally, Harris Bey had, under MICH. COMP. LAWS § 791.255, the opportunity to request judicial review of the hearing officer's final written decision and it does not appear that Harris Bey did so. Accordingly, the first requirement is met.

Under the second requirement, a "hearing officer [must] 'resolve[] a disputed issue of fact that was properly before it.'" *Maben*, 887 F.3d at 259 (quoting *Peterson*, 714 F.3d at 911-913). Here, the hearing officer was charged

---

[7] Harris Bey also submitted a "witness statement" from fellow inmate Dakota Bean, which apparently was presented at the hearing. Bean says he never saw Harris Bey engaged in threatening behavior and that Hissong threatened him and Harris Bey with a ticket if they kept writing grievances. As defendants note, the unsigned and unsworn "witness statement" is not proper evidence.

14

with determining whether Harris Bey exhibited threatening behavior. That was the disputed issue of fact. The hearing officer made detailed findings after reviewing all of the evidence and found that Harris Bey's behavior did not amount to threatening behavior, but constituted insolence, concluding in part:

> I find at the very least regardless of prisoner's specific words, that his actions and loudness were disrespectful and abusive to the staff person. Even taking his words that they were done talking. It is believable that these were spoken rudely. In total, I find prisoner acted in a manner to harass and degrade the staff person. I find this incident is more conducive to insolent behavior. The insolence charge is upheld.

(ECF No. 33-6, PageID.208). Accordingly, the second requirement is met because the hearing officer clearly resolved the disputed issue of fact.

Under the third requirement, Harris Bey must have " 'had an adequate opportunity to litigate the factual dispute.' " *Id*. The hearing report indicates that Harris Bey requested that the hearing officer review the video recording of the incident as well as a statement from the fellow prisoner Dakota Bean. (ECF No. 33-6, PageID.207). The hearing officer indicated that this evidence was reviewed. *See* ECF No. 33-6. Further, the hearing officer also considered Harris Bey's provided statement. *See id*. Based on the record, Harris Bey was afforded the opportunity to litigate, and did litigate, the factual dispute. Accordingly, the third requirement is met.

As the first three requirements are met, the hearing officer's factual findings are entitled to the same preclusive effect that they would have in state court.

*Maben*, 887 F.3d at 259. Because the hearing officer's factual findings are entitled to preclusive effect, Harris Bey cannot challenge them in this action.

Moreover, the record shows that Hissong issued Harris Bey the misconduct ticket because of Harris Bey's behavior on January 4, 2019, as described in the report and for no other reason. *See* ECF No. 33-5, PageID.203 (Hissong's affidavit). Harris Bey was found guilty at a hearing based on his behavior. And Harris Bey therefore cannot show causation as to his retaliation claim against Hissong, i.e. that Hissong wrote the misconduct ticket because of the grievances Harris Bey filed. Summary judgment is appropriate for this additional reason.

Based on the above, defendants are entitled to summary judgment on Harris Bey's First Amendment claim related to the January 4, 2019 misconduct ticket.

## B. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. Section 1983 claims are subject to the affirmative defense of qualified immunity. *Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014). "Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016). However, the Court need not determine whether defendants are entitled to qualified immunity because the Court has already recommended dismissing all claims against all

16

defendants. *See Coleman*, at *9 ("As the Court has recommended dismissing all claims against all Defendants except for Coleman's 'Jpay block' claim against Mohlman, the Court will limit its qualified immunity analysis to that specific claim."). *See also Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that judges have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first . . . [.]").

## V. Conclusion

For the reasons stated above, the undersigned recommends that defendants' motion for summary judgment be GRANTED and the case be DISMISSED.

Dated: June 17, 2021      s/Kimberly G. Altman  
Detroit, Michigan     KIMBERLY G. ALTMAN  
    United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

17

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 17, 2021.

                                                       s/Marie E. Verlinde
                                                       MARIE E. VERLINDE
                                                       Case Manager